ALBANY,
Feb. 1807.

Elting &others
v.
Scott and Sea·
man.

A representa-
tion to one un·
derwriter is
not eveidence
of a represen-
tation to a sub-
sequent under-
writer on a
different poli·
cy, though on
the same ves-
sel, and against
the same risks.
A case made
between the
assurers and
assured, in an
action on a
policy of in-
surance, will
not be received
in evidence in
another suit in
which the par-
ties are diffe-
rent, though it
relate to the
same subject or
policy. Where
a policy con-
tains no war-
ranty of neu-
trality, or of
the character
of the vessel,
the assurers
take upon
themselves all
risks, bellig-
erent as well
as neutral.
Evidence,

We are therefore of opinion, that judgment must be rendered for the plaintiff.

Judgment for the plaintiff.

Elting, Dunlap and Grant *against* Scott and Seamen.

THIS was an action of *assumpsit* for money had and received to the use of the plaintiff. The cause was tried before Mr. Justice *Spencer* at the *New-York* sittings, the 16th April, 1806. On the 30th December, 1797, the plaintiffs underwrote a policy of insurance, effected in the name of the defendants, " for themselves, or whomsoever else might have any interest therein," on goods, on board the schooner *Betsy*, on a voyage from *Curracoa* to *New-York*. On the 11th April, 1798, the defendants claimed a total loss, by reason of capture and condemnation by the French, and the amount of loss was paid to them. The persons whose names were first underwritten on the policy, were *Rhinelander, Hartshorne & Co.*; the plaintiffs underwrote next, and there were several other names subscribed. A suit was brought by the defendants against *Rhinelander, Hartshorne, & Co.* and a verdict was found in their favour in 1799; and in 1801 a final judgment was given on the verdict. From the record in that suit produced in evidence, it appeared, that the interest was averred to be in the present defendants. The policy was in the ordinary form, and without any warranty. A separate policy had been underwritten by *Mark & Speyer* and others, on the same cargo, and for the same voyage, in January, 1798. In

therefore, that the owner resided in a belligerent country is irrelevant, as it does vary the risk, or the responsibility of the assurers. Where the national character of a vessel is not warranted or represented, it is not incumbent on the assured to show, that she had a sea-letter, or other papers required by the laws of the country, or by treaties with foreign nations. The implied warranty of seaworthiness, does not extend so far as to warrant that the vessel shall have all proper documents or papers on board; it being material only to show that such papers were on board, when the national character of the vessel appears on the policy, or is represented to the assurer. The assurer who has paid a loss on a policy, cannot recover it back, unless he make out, affirmatively, a clear case of mistake, as to the fact or the law. Whether an assurer, who has paid a loss, under a full knowledge of all the facts, can recover back the money, on the ground of a mistake as to the law, *debitatur.*

ALBANY,
Feb. 1807.

Elting &others
v.
Scott & Seaman.

a suit by the present defendants against M. & S. a verdict was given in 1799, for the defendants, *Mark & Speyer*, on which a final judgment was entered, in October, 1801. The declaration in that suit averred the interest to be in the present defendants. The plaintiffs offered in evidence a special case made for the argument of that [*] cause which was rejected by the judge. It was proved, that one *George Scott*, a citizen of the *United States*, was a joint partner with the present defendants, in the cargo insured by the plaintiffs, and that he had resided in *Curracoa*, which is a belligerent colony, near a year, having continued there part of 1796 and 1797, and returned there again in December, 1797, after coming to *New-York*. While at *Curracoa*, *Scott* transacted business as a commission merchant, for the defendants and others. It appeared also, that one of the present defendants had said, that the vessel in which the cargo insured was shipped, had not a *sea-letter* on board, at the time of her capture; and that the want of that, or some other papers, was the cause of her capture and condemnation, the vessel having sailed without her papers. A copy of the condemnation was shown to the underwriters. The plaintiffs offered to prove, that the fact of the interest of *George Scott* in the cargo, was not communicated to the insurers when the policy was underwritten; and that had they known that fact, the *premium* would have been increased, the actual premium having been calculated on the belief, that the property was neutral, and exclusively owned by the defendants. This testimony was overruled by the judge. It did not appear that any representation was made to the insurers, as to the property insured. Upon this evidence, the judge directed the plaintiffs to be called, and a nonsuit was entered.

A motion was now made to set aside the nonsuit, on the following grounds :

1. Because the judge rejected testimony which ought to have been admitted.

[ 158 ]

ALBANY,
Feb. 1807.

Elting &others
v.
Scott & Sea-
man.

[* 159]

* See vol. 1.
p. 201.

† 4 Comyns,
89. Evid. A.
5.  1 Ld.
Raym. 730..
Pealce's Law
of Evi. (2d
edit.) 37.

‡ 1 Caines,
237, Barne-
well v.
Church.,Mur-
ray v. United
Insurance
Company, Ju-
ly Term,
1800.

2. Because there was a concealment of the residence and interest of *George Scott*.

3. Because the vessel sailed without papers, and was captured and condemned.

4. Because the cause ought to have been submitted to the jury. on the ground, that all the facts were not disclosed to, or known by the plaintiffs, when the loss was paid; and if they had been disclosed or known, the plaintiffs acted under a mistake as to the law.

[*]*Bogert*, for the plaintiffs. 1. The case made in the suit of *Mark and Speyer*, was on the same policy, which involved the same question.

KENT. Ch. J. Has not this point already been decided in the case of *Neilson v. The Columbian Insurance Company?*]

*Bogert*. The point there decided was, that a case made at a former trial could not be adduced to impeach the testmony of a witness given on a second trial. A judgment or verdict is evidence against a person, not a party, but who claims under a party, or under the same deed ; or where the controversy relates to the same subject matter.† Here the action was on the same policy or instrument, and related to the same question or right, and by parity of reasoning, the admissions of the party in the former case ought to have been received in evidence.

2. *Scott* being an adopted alien, or resident in a belligerent country, was a material fact which ought to have been communicated to the plaintiffs, since it enhanced the risk of capture. It is true, that where there is no warranty or representation, the assured takes upon himself all war-risks.† There was a sufficient evidence offered to the jury to make it a question for them to decide whether there was a representation, that the property was neutral or not. In the case of *Mark & Speyer*, there was an averment of representation.

3. The case states, that the vessel sailed without her papers. It is an implied condition in regard to every ves-

sel, that she shall be navigated and conducted according to the law of nations, and the laws of the country to which she belongs.§ If she be condemned for want of the proper documents, or for a violation of the provisions of existing treaties, the policy is void. The vessel, in this case, was condemned as enemy's property.

[KENT, Ch. J. It does not appear in the policy, that the vessel was *American*, or to what nation she belonged.]

It is sufficient if she was in fact *American*. By the law of nations, every vessel must have a *sea-letter*, or *passport*. [*] This is required by the the law of the *United States*, and by treaties existing with foreign countries.

[LIVINGSTON, J. But must not the vessel, to make this a valid objection, be warranted neutral?"].

The insured on the cargo may object to the seaworthiness of the vessel; and a vessel sailing without proper documents, cannot be said to be seaworthy. So if the vessel have no pilot on board, in sailing up a river, or into a port, the assurer is not answerable in case of loss.* And it seems to be the opinion, that she must not only have a pilot on board, but one duly qualified according to the laws of the country. For all faults which do not amount to *barratry*, the owner, and not the insurer, is liable.†

4. A person who pays money under mistake either as to the law or fact, may recover it back, unless he was under a moral obligation to pay, or has paid under judicial process. A person who promises to pay under a mistake as to his legal responsibility, is not liable on such promise.‡ If an adjustment of a loss to be agreed to, under a misconception of law or fact, it is not binding; and if money has been paid by mistake on such adjustment, it may be recovered back.§ This was considered as a principle of the English law, as well as of the civil law, until it was questioned by Mr. Justice *Buller*, in the case of *Bilbie v. Lumley*,** whether money paid under a full knowledge of all the facts, could be recovered

ALBANY,
Feb. 1807.

Elting &others
v.
Scott & Seaman.

§ *Marshall*, 317. 385.

[* 160]

* *Law v. Hollingworth*, 7 Term, 160.

† 1 *Caines' Cases in Error*. ii. *Vos.* & *Graves v. United Insu. Company.* ‡ 2 *Bur.* 1005. *Moses v. Macfarlan.* Cow. 565. 2 Blackst. 824. § *Christian v. Coombe*, 2 Es- pinasse's Cases, 489. 1 T. 285. *Bize v. Dickason.* *Marshall*, 544, 545, 546. *Doug.* 638. 1 *Caines*, 36. *Chitt. p.* 102. ** 2 *E.* 496.

VOL. II.

ALBANY,
Feb. 1807.

Elting &others
v.
Scott and Sea-
man.

†† See *Evans'*
translation of
*Pothier on
Obligations*,
in the appen-
dix, vol. 11,
pp. 386–407,
where the ca-
ses are exa-
mined and the
[* 161]
doctrine dis-
cussed.
‡‡ 1 *Caines*, 36.
The court de-
cided, that an
*adjustment*
would not be
opened, un-
less for fraud
or mistake
from facts not
known.

back on the ground of its having been paid under an
ignorance of the law.†† From the reasoning of this
court in the case of *Dow* v. *Smith*,‡‡ it would seem that
the notion of Mr. Justice *Buller* had not been adopted
here, and that an adjustment of a policy, though made
with a knowledge of all the facts, would not become con-
clusive on the insurers, if it appeared that they were not
legally responsible.

*Wells* and *Hoffman*, contra. The plaintiffs, to make
out their case, must show either a mistake or a fraudu-
lent concealment of facts. To prove a concealment of a
material fact, they offered in evidence a *case* made in a
[*] cause between the present defendants and *Mark* and
*Speyer*. It would be a mischievous and dangerous rule to
allow these cases to be read in evidence, even between
the same parties, but far more so between different par-
ties, though relating to the same subject of controversy.
*Cases* came into practice in place of the *reports* of the
judge of what passed at the trial. They are generally
made up by consent, and contain admissions of the coun-
sel which never ought to conclude the parties, who may
be absent, or ignorant of what is done on these occasions.
That a knowledge of the fact of the residence and own-
ership of *Scott*, or that the vessel sailed *without papers*,
would have enhanced the premium, is not sufficient evi-
dence of a misrepresentation ; or to make out a contract
to indemnify against a *belligerent*, or *neutral* risk. The
rates of premium on the same risks, by different under-
writers are various, and can afford no satisfactory cri-
terion of the nature or extent of the risk insured against.
The plaintiffs come here to recover back money already
paid, and the *onus probandi* lies upon them ; they must
clearly show that there was a representation ; that the
vessel sailed without papers ; and that there has been a
fraudulent concealment by the defendants ; otherwise, as
this is a general policy, without warranty, they must be
considered as liable for all risks.

The want of papers was not insisted on at the trial. It does not appear from the case that the vessel was *American*, so that the assured would be obliged to have the papers on board requisite to support the character of an *American*.

ALBANY,
Feb. 1807.

Elting & others
v.
Scott & Sea-
man.

*Radcliff*, in reply. This being a motion to set aside a nonsuit, it ought to be granted, if the court should be satisfied that there was evidence enough to justify the jury in giving a verdict for the plaintiff. It is not pretended, that a *case* made, is evidence against third persons, but only against the parties. Would the facts contained in a special verdict be evidence against the party? [*] If so, why not a case? Both contain the facts proved, or admitted at the trial. In *Neilson* v. *The Columbian Insurance Company*, the court considered the case as conclusive between the parties. But admitting it to be *prima facie* evidence only, it ought to have been received. A representation to the first underwriter on the same policy, is a representation to all the subsequent underwriters. There is a wide difference between a *war-risk*, and a *peace or neutral risk*. A representation to some of the underwriters on the same risk, is some evidence, at least, of a similar representation to the others; and the evidence offered to show a *peace-risk*, was proper to be submitted to the jury, from which, when connected with the other facts, they might find that the parties did not contract to insure against war-risks.

[* 162]

Though the case submitted to the court is silent as to the character of the vessel; yet as the parties reside here, the presumption is that she was *American*, and therefore bound to have a sea-letter and other necessary papers on board.

KENT, Ch. J. delivered the opinion of the court. The court in the first place, rejected the evidence of *a case* which had been made in an action brought by the present defendants against *Mark* and *Speyer*. This case was offered, in order to raise a presumption, that the defen-

ALBANY,
Feb. 1807.

Elting&others
v.
Scott & sea-
man.

dants had represented the property to be neutral. It is, however, a sufficient answer to this, to observe, that a representation to one insurer cannot be evidence of a like representation to another insurer, on a different policy. The inference is too remote, and has no solid ground to support it. These cases are a species of testimony which ought not, perhaps in any case, to be admitted, unless where the admission is made a condition of granting a new trial; nor has it been the practice to admit them. They are generally drawn by counsel, without any communication with the parties, and often with a view to bring before the court some particular point unconnected with much of the narrative part of the case, and which, for that very reason, may have passed without criticism or attention. [*] The other testimony refused, was that which was offered to show, that the interest of *George Scott* was not communicated to the plaintiffs, and that the knowledge of that fact would have increased the premium. I am also of opinion, that this testimony was properly rejected as impertinent. The policy stated, that the plaintiffs underwrote for the defendant *or whomsoever else might have an interest;* it was a policy without any warranty of neutrality, and, as I am bound to conclude, without any representation to that effect, because there is no evidence of such representation. The plaintiffs then took upon themselves the risk of the property, whether neutral or belligerent, according to the decision in *Murray* v. *The U. I. Company.* (*April Term,* 1801.) It would appear, therefore, to have been perfectly immaterial whether the interest of *George Scott* was or was not disclosed. That interest made no alteration in the risk assumed, and there is no sufficient cause why it should have affected the premium. As the plaintiffs assumed war-risks, it must be presumed that they took what was deemed in that case an adequate premium. When the legal operation of a policy is ascertained by a sure and decisive test, the rate of premium is a circum-

stance wholly immaterial, and cannot alter its construction. It is in this view that I consider the testimony offered as inadmissible.

2. The second point has been already anticipated; and if the residence and interest of *George Scott* were concealed, it was not a material concealment, because his interest did not vary the risk. But there is no evidence that his interest *was* concealed; and any inference to that effect would be too remote. The facts in the case were not sufficient to warrant a jury to draw the inference.

3. The third point is, that the vessel sailed without her papers. A confession was made by one of the defendants that the vessel sailed without a sea-letter, and the witness thinks that the defendants also said, that she had sailed without her papers. But I very much doubt whether it be a part of the implied warranty of seaworthiness, that a vessel shall have her proper documents on board. [*] There is no case that goes to that length. These documents are only material when the *national* character of the vessel is warranted or represented. In the present case, it does not appear to what nation, or to what individual the vessel belonged. All that is stated is, that she was to sail on a voyage from *Curacoa* to *New-York ;* the plaintiffs, as insurers of the cargo on board, took upon themselves belligerent risks. The sea-letter and other documents could only have been requisite to protect the vessel as a neutral, but it was no part of the contract that she was to sail in that character ; or to protect her against the revenue laws of *Curracoa,* but those laws we are not to notice; or to comply with the laws of our own country, to which the vessel was bound ; but there is no evidence that she was sailing in contravention of our laws. (*Christie* v. *Secretan.**) A vessel may be competent to perform the voyage insured without the possession of these documents ; and although we do not profess to declare a very strong opinion on this point, we are

ALBANY,
Feb. 1807.

Elting&others
v.
Scott & Seaman.

[* 164]

*8 *Term,* 192.
Opinion of
*Lawrence, J.*

ALBANY,
Feb. 1807.

Elting&others
v.
Scott & Sea-
man.

[ *165]

* P. 79. 147.
152. 251.

inclined to think that the want of those documents could not have furnished to the plaintiff a valid defence against the policy.

4. The last ground for the present motion is, that it ought to have been submitted to the jury to determine whether there was a due disclosure of the facts at the time the loss was paid ; or if disclosed, whether the plaintiffs did not act under a misapprehension of the law.

As a question of fact, there is no evidence of a want of due disclosure ; and the jury would not have been warranted to have drawn that inference against the defendants. The sentence of condemnation was exhibited, and we must intend, that such sentence contained the material facts. If it did not, the plaintiffs ought to have produced it, to show what it did contain. That sentence must be presumed to have contained all that was requisite to be disclosed, to entitle the assured to call upon the plaintiffs for their indemnity; and as the plaintiffs paid a total loss upon that disclosure, they have not shown any just ground for reclaiming the money. It was incumbent on them to have made out, affirmatively, a clear case of mistake, but they have failed in showing [*] any mistake, either of the fact or of the law. It will be unnecessary, to consider the question which was agitated upon the argument, whether a payment made under a mistake of the law, and with full knowledge of the facts, will, in any case, upon that ground only, sustain an action for money had and received. This question has been very ably discussed, and different opinions formed upon it by the civilians ; but it is considered as settled in England, by the late case of *Bilbie.v. Lumley ;* (2 *East.* 409.) and that decision seems to be in conformity with the doctrine anciently taught in the *Doctor and Student.** But on this point we mean not to give any opinion ; as the plaintiffs did not make out a case which would entitle them to a verdict, the nonsuit was properly directed, and the motion so set it aside ought to be denied.

Rule refused.